IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:21-cv-00169-MR

| | |
|---|---|
| JIMMY DANIEL RAYBON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| LARRY WILLIAMSON, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 40].

**I. BACKGROUND**

The incarcerated plaintiff, Jimmy Daniel Raybon, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983.[1] The verified Complaint and the verified Amended Complaint passed initial review against Defendants Jenny Hice (also known as Jennifer Ann Harris)[2] and Tass Jansen for retaliation, and against Larry Williamson on a theory of supervisory liability. [Doc. 1: Complaint; Doc. 10: Order on Initial Review of Compl.; Doc. 20: Am.

---

[1] The Plaintiff is presently incarcerated at the Pamlico Correctional Institution.

[2] Identified as "Jenny Hice" in the Complaint. The Court will continue to refer to this Defendant by her former name of "Hice" for the sake of consistency.

Compl.; Doc. 21: Order on Initial Review of Am. Compl.]. The Plaintiff seeks a declaratory judgment; compensatory and punitive damages; court costs and fees; injunctive relief; and any additional relief the Court deems just, proper, and equitable. [Doc. 20: Am. Compl. at 20].

The Defendants filed the instant Motion for Summary Judgment. [Doc. 40: MSJ]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 42: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired. This matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

3

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to the Plaintiff is as follows.[3]

During 2021, the Plaintiff was participating in the Correction Enterprise furniture upholstery training program at the Alexander CI. [Doc. 1: Compl. at 14]. The Plaintiff was considered a "close custody" inmate due to the length of his sentence. [Doc. 41-2: Hice Decl. at ¶ 7]. While he participated in the furniture program, however, he was housed in that program's medium custody housing block pursuant to policy. [Id.].

On February 18, 2021, the Western Regional Director received a letter from the Plaintiff inquiring about a North Carolina Department of Revenue (NCDOR) regulation regarding the garnishment of funds from his inmate account. [Doc. 41-4: Williamson Decl. at ¶ 3; Doc. 1: Compl. at 14]. Williamson, the NCDAC's regional program coordinator, responded to the letter and spoke to Alexander CI staff, even though Williamson had no supervisory duties at Alexander CI. [Doc. 41-4: Williamson Decl. at ¶¶ 2-3]. Jansen, the furniture plant director, and Hice, the furniture program supervisor, told the Plaintiff that same day that he would be fired, demoted

---

[3] Since Plaintiff's Amended Complaint was verified, the well-pleaded allegations contained therein that would be received as admissible evidence are considered herein as part of the forecast of evidence.

to close custody, or transferred to a distant facility if he continued inquiring about the garnishment issue.[4] [Doc. 1: Compl. at 14; Doc. 20: Am. Compl. at 14]. On March 11, 2021, the Plaintiff wrote Williamson a letter stating that the Plaintiff had been "STRONGLY discouraged from inquiring about this regulation any further" on February 18, again inquired about the garnishment issue, and stated that he would notify the NCDAC secretary of his concerns. [Doc. 1-2: Compl. Ex at 1]. Williamson responded that he had no authority to review regulations. [Id. at 5].

On June 10, 2021, the Plaintiff received an emergency dental examination for a painful, decayed tooth. [Doc. 41-3: Response Ex at 16]. He was given antibiotics and ibuprofen, and extraction was recommended. [Id.].

On June 15, 2021, the Plaintiff wrote a letter to Jansen and Hice,[5] complaining about the furniture program and requesting a transfer to another prison. [Doc. 1: Compl. at 14; Doc. 1-3: Compl. Ex at 1-2].

On June 16, 2021, Hice said "I hope you enjoy your surprises" and "we have plans for you."[6] [Doc. 1: Compl. at 14; Doc. 20: Am. Compl. at 15].

---

[4] Hice denies this. [Doc. 41-2: Hice Decl. at ¶ 4]

[5] The letter was also sent to Plaintiff's inmate/supervisor DeWayne Warren, who is not a defendant in this case.

[6] Hice denies this. [Doc. 41-2: Hice Decl. at ¶¶ 4-5].

6

About an hour later, the Plaintiff "left work due to a severe toothache [that] he was being treated for." [Doc. 1: Compl. at 15; Doc. 20: Am. Compl. at 15-16]. The Plaintiff did not inform staff before he left work, and he was not seen by medical or dental that day. [Doc. 41-2: Hice Decl. at ¶ 5; Doc. 41-3: Resp. Ex at 1-29 (Plaintiff's prison medical and dental records for June 2021)]. The Plaintiff was deemed to have "removed himself" from the furniture program by leaving this way. [Doc. 41-1: Jansen Decl. at ¶¶ 6, 9-10]. Neither Jansen, Hice, nor Williamson removed him from the program. [Id.; Doc. 41-2: Hice Decl. at ¶ 10; Doc. 41-3: Williamson Decl. at ¶ 4 (Williamson has no involvement in the furniture program)].

When the Plaintiff returned to his cell on June 16, it had been "trashed," and his personal property had been damaged and destroyed. [Doc. 1: Complaint at 15]. Neither Hice, Jansen, nor Williamson had any involvement with the damage to the Plaintiff's personal property. [Doc. 41-2: Hice Decl. at ¶ 9-10; Doc. 41-1: Jansen Decl. at ¶ 8; 41-4: Williamson Decl. at ¶ 4].

Hice informed unit management that the Plaintiff had left the program and requested that he be removed from the furniture housing block to make room for a new participant. [Doc. 41-2: Hice Decl. at ¶¶ 7-8]. The Plaintiff was returned to the more dangerous close-custody housing, his regular housing assignment, on the evening of June 16. [Id. at ¶ 7; Doc. 20: Am.

Compl. at 17; Doc. 41-2: Hice Decl. at ¶ 7]. The Plaintiff was assaulted by another inmate the next day. [Doc. 1: Compl. at 21; Doc. 20: Am. Compl. at 17].

Hice became the Plaintiff's case manager when he left the furniture program. [Doc. 41-2: Hice Decl. at ¶ 10]. She went to see the Plaintiff after she learned of the assault. [Id.]. Hice ensured that the assault had been reported to unit management and asked the Plaintiff's transfer coordinator to "backlog" him for transfer to the Plaintiff's first-choice facility. [Id. at ¶ 7].

The Plaintiff wrote grievances and sent a letter to the regional office in which he again inquired about garnishment, complained that he had been removed from the furniture program, stated that he had been assaulted, and requested a transfer. [Doc. 41-4: Williamson Decl. at ¶ 3]. He noted that he planned to file a § 1983 action. [Id.].

On July 30, 2021, the Plaintiff was transferred to Pamlico CI, which is "far away." [Doc. 1: Compl. at 19]. A transportation officer[7] said "[y]ou know Tass [Jansen] has a lot of pull. Didn't you know better than to make him mad!" [Id.]. Neither Jansen, Hice, nor Williamson decided where the Plaintiff would be transferred. [Doc. 41-1: Jansen Decl. at ¶¶ 1, 6-8; Doc. 41-2: Hice Decl. at ¶¶ 2, 9-10; Doc. 41-4: Williamson Decl. at ¶ 4].

---

[7] The unnamed transportation officer is not a defendant in this case.

## IV. DISCUSSION

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F. 3d 533, 540 (4th Cir. 2017). "The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct." Wade v. Ballard, No. 2:13-cv-12817, 2016 WL 3693597, at *4 (S.D.W. Va. June 16, 2016) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

Moreover, to establish liability under § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), however, supervisory liability may attach under § 1983 if a plaintiff can establish that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of

constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) and "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw, 13 F.3d at 799 (citations omitted).

The Plaintiff has asserted a claim that the Defendants Hice and Jansen retaliated against him for refusing to stop writing letters and grievances by: firing him from the furniture plant program; damaging or destroying his personal property; demoting him to close custody where he was assaulted; and transferring him to a distant prison; and that Defendant Williamson failed to intervene in the retaliation that was being perpetrated by his subordinates. [Doc. 20: Am. Compl. at 18].

However, the Plaintiff has not presented a forecast of evidence that any Defendant took an adverse action against him because he exercised his First Amendment rights. The forecast of evidence shows that the Plaintiff quit the furniture program by leaving without an adequate reason; that no Defendant fired him or destroyed his property; that he reverted to his regular close-custody housing assignment upon leaving the furniture program; and that the Defendants did not determine his transfer destination. From this

10
Case 5:21-cv-00169-MR   Document 43   Filed 06/11/24   Page 10 of 12

forecast of evidence, no reasonable jury could find that any Defendant took an adverse action against the Plaintiff in retaliation for exercising his First Amendment rights. Because the Plaintiff has failed to demonstrate a genuine dispute of material fact regarding any underlying retaliation, his supervisory claim against Defendant Williamson necessarily fails. See Givens v. O'Quinn, 121 F. App'x 984, 991 n.6 (4th Cir. 2005) (in the absence of an underlying constitutional violation, a supervisory claim necessarily fails). As such, the Court will grant Defendants' Motion for Summary Judgment.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that any Defendant violated a constitutional right, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment, and this action is dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 40] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to note in the Court's record that Defendant Jenny Hice is also known as Jennifer Ann Harris.

**IT IS SO ORDERED.**

Signed: June 10, 2024

Martin Reidinger
Chief United States District Judge